**Lesley STEPHENS, Plaintiff,**

*v.*

**CITY OF CHICAGO, a municipal corporation, Rick J. Santella, Rudy Urian, Eileen Joyce, and Adrienne Kane, Defendants.**

**No. 98 C 809.**

United States District Court,
N.D. Illinois,
Eastern Division.

Sept. 27, 2001.

---

Law Offices of Edward T. Stein, Chicago, IL, for plaintiff.

City of Chicago, Law Department, Corporation Counsel, Chicago, IL, for defendant.

## *ORDER*.

ROSEMOND, United States Magistrate Judge.

Before this Court is *"Plaintiff's Motion For Reconsideration Of Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane Regarding Political Patronage"*. The motion seeks reversal of our *Order* of April 12, 2001 *denying* *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane."* **The motion is denied.**

As correctly noted in *"Plaintiff's Memorandum In Support Of Motion For Reconsideration Of Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane Regarding Political Patronage"* a motion for reconsideration is only appropriate when:

1. The court has misunderstood a party,

2. The court has made a decision outside the adversarial issues presented to the court by the parties,

3. The court has made an error of apprehension, not reasoning,

4. A significant change in the law has occurred, or

5. Significant new facts have been discovered.[1]

As always, plaintiff is deliberately vague with its charges against the Court. In any event, we resolve plaintiff's broad and non-specific challenges as follows.

*Ground (4)*, quoted above, is unavailable to the plaintiff as a challenge to the Court's *Order* of April 12, 2001, because no significant change in the law has occurred, and plaintiff does not assert that it has. Apparently, the motion to reconsider is predicated on the remaining grounds noted above, although no attempt to be specific about the matter is made.

■ An apparent attempt is made to base the motion to reconsider on ground (5) above. At Page 2 and 3 of *"Plaintiff's Memorandum In Support Of Motion For Reconsideration "*, plaintiff states the following:

Discovery in this case has revealed more information about this [political patronage] policy, practice, or custom. For example, Ernie Greb, Director of Operations, also worked for Alderman Mell's organization, along with former Deputy Commissioner Urian, both of whom have advanced rapidly through the ranks at Fleet, also known as "Mell's Place". Both Mr. Urian and Mr. Greb obtained positions for which the Plaintiff applied and was qualified. Plaintiff has learned that during the job interview of the Commissioner's brother, Gary Santella, for one of the positions for which Plaintiff applied and was qualified, Mr. Urian and Mr. Greb allegedly assisted Gary Santella in answering the interview questions and, when the Fleet Personnel employee questioned this, she was told "didn't you get the phone call [from the Commissioner's Office]." Plaintiff has also learned that Patrick Ward, the decision-maker at the downtown Personnel Office, and others, volunteered in political campaigns. Upon information and belief, several of the other persons promoted instead of the Plaintiff were also politically connected to figures like Ald. Mell and Mike Madigan.

Discovery for this action has been open for approximately 36 months or since the April 30, 1998 filing date of the original complaint, and yet the plaintiff still makes charges "on information and belief." By now, the plaintiff ought to know. Plaintiff has sought and obtained multiple extensions of time within which to complete fact discovery. If he does not know after more than three years of discovery, it is because he never knew, and his case is based on speculation, and his discovery requests nothing more than fishing expeditions.

In any event, we analyze the above-quoted section of plaintiff's motion to compel. Plaintiff never states that the above-noted, purportedly, significant facts are "new" or that they were unknown at the time of the filing of his February 29, 2000 motion to compel. This omission in and of itself is sufficient to say that he has failed to satisfy ground (5).

Moreover, the purportedly "significant" facts are by no means significant. There is no allegation nor any facts pled from which one could infer that the plaintiff is qualified to hold the positions of Director of Operations or Deputy Commissioner, or that he ever applied for those positions. If the plaintiff is unqualified for these positions or never applied for them, then political patronage had nothing to do with his non-promotion to these positions.

Again, with respect to his purportedly new facts, the plaintiff is intentionally vague. He never identifies what positions Messrs. Urian and Greb obtained that he applied for and was more qualified for than they. He also never identifies when these "positions" became available or whether they are within the applicable statute of limitations. Plaintiff never identifies what position Mr. Gary Santella obtained for which the plaintiff was more qualified.

The misleading nature of the above-quoted section of plaintiff's motion to reconsider is all the more apparent when one realizes that Mr. Rudy Urian has held the position of Deputy Commissioner, Bureau of Operational Service, since June of 1994.[2] Likewise,

1. *See, Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir.1990).

2. Exhibit G, *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane."*

Mr. Ernie Greb has held the position of Director of Operations since June 16, 1994.[3] By his own allegations, plaintiff did not begin to complain to defendants Santella, Urian, and other supervisors about the lack of minorities in middle and upper management positions until *late* 1994.[4] June is not late 1994. More importantly, by his own allegations, the first promotion that he sought and did not obtain was that of Manager of Vehicle Adjustments—not that of Deputy Commissioner, nor that of Director of Operations. And, most importantly of all, he did not seek the position of Manager of Vehicle Adjustments *until February of 1995*. How then could any information regarding how Messrs. Urian and Greb obtained their positions *in 1994* be deemed significant, or for that matter relevant? And, how can it be argued with a straight face that the plaintiff applied for positions held by Messrs. Urian and Greb when the only positions that either of them has ever held since June of 1994 is their present positions which they held long before the plaintiff ever applied for any of the positions of which he now complains?

No significance can be attached to the fact that "Patrick Ward, the decision-maker at the downtown Personnel Office, and others, volunteered in political campaigns." So what? There is no allegation that any of Patrick Ward's decisions directly affected the plaintiff's ability to be promoted to positions for which he applied and was the most qualified candidate.

None of the "facts" recited on Pages 2 and 3 of *"Plaintiff's Motion For Reconsideration"* are "new" or "significant". Accordingly, ground (5) is not a basis for grant of the motion to reconsider.

Purportedly, the motion to reconsider rests primarily on grounds (1), (2), and (3) quoted above. Ground (2) is clearly unavailing. The Court did not make a decision outside of the adversarial issues presented by the parties. And, plaintiff can point to no such circumstance. Further, as we demonstrate hereinafter, none of the remaining two grounds supports the motion to reconsider.

*First*, plaintiff argues that, in resolving his motion to compel, the Court considered some matters that were not at issue, and omitted to consider some that were. More specifically, plaintiff criticizes the Court for discussing Document Request No. 1 of *Plaintiff's Third Request For Production*, which was not at issue, and for purportedly failing to discuss Interrogatory No. 4 of *Plaintiff's Second Set Of Interrogatories* and Document Request Nos. 11 and 12 of *Plaintiff's Third Request For Production*, which were at issue. The challenge is without merit.

*Document Request No. 1* reads in pertinent part as follows:

All documents stating your policies, regulations, guidelines, or procedures for using political patronage as a factor in hiring, promotion, or disciplinary decisions for the Department of Fleet Management for the years 1993 to the present.[5]

Document Request No. 1 was discussed in the April 12th *Order* because it corresponded to Interrogatory No. 2, and because it permitted the Court to illustrate the type of political patronage paper discovery that was being sought by the plaintiff. It also was a vehicle by which the Court could better illustrate the obstacles that lay in pursuit of such discovery such as the *Shakman Consent Decree*.[6] Because of the *Shakman Decree*, the City probably did not maintain records that related in any way to an employee's political affiliation. And, indeed, the City confirmed this presumption.

As we noted in our April 12th *Order*, it was the City's position that to require it to compel its employees to answer questions concerning their political associations would potentially expose it to charges of having violated the *Shakman Consent Decree*. According to the City, under the *Shakman Decree*, the City was enjoined from, among other

---

3. Exhibit G.

4. Amended Complaint, at ¶ 26.

5. Exhibit C, at 6, *supra*, n. 2.

6. *Shakman v. Democratic Organization of Cook County*, 481 F.Supp. 1315, 1358 (N.D.Ill.1979), *reversed in part sub nom, Shakman v. Dunne*, 829 F.2d 1387 (7th Cir.1987), *cert. denied*, 484 U.S. 1065, 108 S.Ct. 1026, 98 L.Ed.2d 991 (1988).

things, "conditioning, basing or knowingly prejudicing or affecting any term or aspect of governmental employment, with respect to one who is at the time already a governmental employee, upon or because of any political reason or factor."[7] Forcing it to ask its employees about their political affiliations, argued the City, creates the potential of future litigation based on alleged violations of the First Amendment and the *Shakman Decree.* Continuing in this vein, the City argued in its memorandum of law that if it was "required to obtain information regarding the political affiliation of the employees plaintiff has identified, any of these employees [could] claim, in a subsequent proceeding, that the City was aware of their political affiliation and that any actions taken [with respect to] them were motivated by this knowledge."

With respect to the Court's non-identification of each and every political patronage discovery request at issue, rather than identify each and every political patronage discovery request, the Court simply chose to refer to them in general terms as the "political patronage" discovery requests. Given the *Shakman Consent Decree,* and given that each and every discovery request at issue was overly broad in scope and time, given that each such discovery request sought irrelevant matter, and given that each was unduly vague, onerous and burdensome, the Court concluded, then and now, that the defendants' objections to the plaintiff's political patronage discovery requests should be sustained. The Court did not identify Interrogatory No. 4 and Document Request Nos. 11 and 12 specifically, because it saw no need to do so. It sustained the defendants' relevancy, vagueness, onerous, and burdensome objections to *all* of the plaintiff's political patronage discovery requests. Again, specific identification was unnecessary. There should not have been any confusion. In any event, we unambiguously clarify the matter now. Before doing so, we give some background to better understand the context in which the motion to compel arose.

The underlying action is essentially a § 1983 civil rights race discrimination and "failure to promote" case. Plaintiff Lesley Stephens is an African–American male employee of the City of Chicago, who presently holds the position of Accident Adjustor with the Department of Fleet Management. Allegedly, Fleet is responsible for the repair, inventory, maintenance, and fueling of over 5000 City-owned vehicles in over 30 City departments. *Fleet employs nearly six hundred employees* and controls a budget of over $60 million.

In January of 1987, plaintiff held the position of Acting Assistant Superintendent and Acting General Foreman with the Department of Fleet Management. He left the department for approximately five years for disability leave. He returned from disability leave in 1993. Upon his return, he was reinstated to the position of Accident Adjustor, a non-management position in Fleet's Adjustment Section. Allegedly, this was a demotion in pay and level of responsibility. As Accident Adjustor, plaintiff was responsible for inspecting and estimating body and mechanical damage to City vehicles; arranging for repairs; negotiating costs of and evaluating repair work; and maintaining records of accident reports, damages, and repair costs. Assertedly, his performance was outstanding.

The gist of plaintiff's amended complaint is that he was denied promotions due to unlawful race discrimination and political patronage. With respect to each position he alleges was unlawfully given to white males, he charges conclusorily that these males were less qualified for the position than he was. He never pleads any facts from which one could deduce that this is so:

> *A complaint may not rest upon conclusions of fact unsupported by allegations of specific facts from which such conclusions may be drawn.*[8]

Even the liberal notice pleading of the *Federal Rules of Civil Procedure* require more

---

**7.** *Shakman,* 481 F.Supp., at 1358.

**8.** *Hills of Palos Condominium Assoc., Inc. v. I-Del, Inc.,* 255 Ill.App.3d 448, 476, 626 N.E.2d 1311, 1331, 193 Ill.Dec. 760, 780 (1st Dist.1993) (emphasis added).

than what plaintiff alleges. As we detail hereinafter, the plaintiff uses his conclusory allegations as the predicate to launch overly broad and predatory discovery requests.

In open-court, at the May 3, 2001 oral argument on the motion to reconsider, *Stephens* counsel argued that the Court considered Interrogatory No. 1 which was not at issue. We disagree.

▊ In Paragraphs 17 and 18, at pages 4 and 5 of *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane,"* plaintiff specifically charges that "Defendant has no legitimate argument for refusing to answer *interrogatory no. 1* and request for production no. 3 from the Third discovery requests ...." (emphasis added). *Interrogatory No. 1 of the Plaintiff's Second Set of Interrogatories* reads as follows:

1. Provide the following information regarding all current and former City of Chicago Department of Fleet Management or its predecessor agencies or departments' employees who received promotions to any position, including but not limited to the positions Plaintiff applied for [for] the years 1993 to present:

 a. Full name;

 b. Race;

 c. Date(s) of promotion(s);

 d. Position(s) promoted to, and position(s) promoted from;

 e. All job titles held by that Person at the Department of Fleet Management and dates those job titles were held;

 f. The basis or bases for the promotion(s);

 g. The qualifications held by The person for the promotion(s);

 h. The name of the person(s) who conducted the interview(s) for the promotion(s) (if no interview were conducted for a position, please so state);

 i. The name of the person(s) who made the promotion decision(s); and

 j. Whether that person has ever received any kind of warning, reprimand or discipline at any time during that person's employment at the Department of Fleet Management.[9]

As we noted in our April 12, 2001 *Order*, all of plaintiff's discovery requests were overbroad in scope and time. So that there is no mistake about the matter, we rule that Interrogatory No. 1, quoted above, is overly broad as to scope and time and, therefore, seeks wholly irrelevant matter. Accordingly, we again sustain the defendants' objections to this Interrogatory.

Interrogatory No. 1 is an example of the *predatory* nature of virtually each and every one of plaintiff's discovery requests. It is clear from such overly broad discovery requests that plaintiff seeks to make discovery so onerous and burdensome in terms of manpower, costs, and the general disruption to the defendants' business so as to coerce a settlement. In his motion to reconsider, plaintiff makes no effort whatsoever to narrow the above-quoted interrogatory. Indeed, no effort whatsoever is made in the motion to reconsider to narrow any of the discovery requests at issue, even though one of the grounds for denying the motion to compel was the overbreadth of the plaintiff's discovery requests.

In any event, returning to the predatory nature of the Interrogatory, Interrogatory No. 1 unabashedly seeks discovery of "employees who received promotions to any position, including but not limited to the positions Plaintiff applied for [for] the years 1993 to present." What possible relevance could information regarding *"any position"*, including secretarial or janitorial positions, to which plaintiff *never* applied, have to do with any of the plaintiff's § 1983 "failure to promote" claims or, in particular, his political patronage claims. It must be remembered that the plaintiff has not filed a class action.

With respect to his individual § 1983 "failure to promote" claim, plaintiff's pleadings

---

9. *"Defendants City, Santella, Joyce And Kane's Objections And Responses To Plaintiff's Second Set Of Interrogatories And Third Request For Pro-* *duction"*, at 4, *Exhibit C to, "Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane "*.

are wholly deficient to support this obvious fishing expedition. Plaintiff has never alleged that he was "*the most qualified*" for each and every position for which he applied. Nor does he ever allege that he was "*as qualified as the person who got the position, and but for the race discrimination or political patronage*" he would have received the promotion. Instead, plaintiff conclusorily alleges that he was qualified for a particular position, or that the person who received the promotion was less qualified than he. No facts from which one could deduce this are ever pled. Such conclusory allegations all too often—intentionally or unintentionally—form the predicate for abusive discovery.

Far too often, in his pleadings, plaintiff uses examples of employment positions which purportedly were denied him, which are and were inappropriate and improper. For example, plaintiff charges that he was unlawfully prevented from being promoted to the position of Director of Operations due to political patronage. On May 3, 2001, in open-court, defendants demonstrated that discovery has revealed that charge to be baseless. According to the defendants, employees are ***not*** promoted to the position of Director of Operations. It is a position obtained ***through appointment only***. Moreover, the position is a *Shakman* exempt position. Therefore, an individual's political affiliation and political sponsorship may legitimately be taken into account. Using the position of Director of Operations as an example of unlawful political patronage is more than specious. It is misleading and improper.

Arguably, every employee in plaintiff's work division—like plaintiff—was "***minimally***" qualified for the Director position. That does not mean that every so "*minimally*" qualified worker, like the plaintiff, had any chance in Hades of ever getting such an appointed position. Defendants maintain that plaintiff never had any chance of obtaining such a position, because, in part, he lacked the years of experience and the ***continuous*** years of employment due to his five year break in service on disability leave. Apparently, discovery has revealed that

plaintiff often applied for positions for which he was never the most qualified or even as qualified as the person who received the promotion. Clearly, unless the plaintiff was qualified for the positions for which he applied, the political affiliation or political sponsorship of the individuals promoted over him is irrelevant. In any event, an allegation that one is qualified for a position, without supporting facts, will not support the massive predatory discovery that plaintiff seeks.

Another of plaintiff's discovery requests at issue was Document Request No. 3. ***Request for Production No. 3*** reads as follows:

> Any and all documents relating in any way to any and all current and former Department of Fleet Management or its predecessor agencies or departments' employees and their promotions to any position within Fleet, applied for by Plaintiff, for the year 1993 to present, including but not limited to their personnel files, salary and benefits information; and performance appraisals, warnings, reprimands or disciplinary action taken again them.[10]

The above-quoted document request is overly broad in scope and time and, therefore, seeks wholly irrelevant matter. The document request is also unduly vague. Does it just seek the production of any and all documents relating to any and all Fleet employees, current and former, and their promotions to positions for which the plaintiff applied? Or worse, does the document request seek any and all documents relating in any way to current and former employees of Fleet who applied for positions for which the plaintiff applied irrespective of whether or not they obtained the position or promotion? The document request is vague and burdensome. It also seeks wholly irrelevant matter, *to-wit:* "Any and all documents ***relating in any way*** to any and all current and former Department of Fleet ... employees", who applied for positions to which the plaintiff applied. For example, what would the ***entire*** personnel files of these employees, which would include such sundry and irrelevant matters as maternal, sick, or vacation leave papers, have to do with whether or not these individ-

---

10. Exhibit C.

uals were more or less qualified for the positions than the plaintiff? Accordingly, we again sustained the defendants' objections to this request.[11]

■ Next, plaintiff's motion to compel sought production of "[t]he *'daily activity sheets'* maintained by the accident adjustment section at Fleet reflect[ing] the job duties each Accident Adjuster was assigned to perform."[12] First, it must be noted that there is absolutely no interrogatory or document request in *"Plaintiff's· First Set Of Interrogatories And Requests For Production To Defendants City Of Chicago, Rick Santella, Eileen Joyce And Adrienne Kane"* which **expressly** calls for such documents. And plaintiff never identifies any such interrogatory or document request in its motion to compel. The request was made by letter.

Document requests from plaintiff's first request for production, such as the following, which seek each and every piece of paper relating to the plaintiff are far too general and non-specific to be deemed to have requested such specific material as "daily activity sheets":

1. All documents and things identified or requested to be identified in the answers to Plaintiff's First Set of Interrogatories, designating to which Interrogatory each document is responsive.

2. All documents and other things pertaining to Plaintiff in any way, including any personnel file, in the possession, custody, or control of Defendant City of Chicago.[13]

Document requests like those quoted-above are so overly broad that in asking for everything under the sun, they ask for nothing specific. All of the document requests in *Plaintiff's First Set Of Document Requests* are overly broad in scope and time, and seek wholly irrelevant matter. None includes a specific request for *"daily activity sheets"*. Nor will we construe their inappropriate breadth to include such a request. Defendants are not required to produce material not **formally** requested. Letter requests are not a formal document request. Letter requests can be a tool for abusive discovery.

■ *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane"* specifically identified Interrogatory Nos. 2 and 4 of *Plaintiff's Second Set Of Interrogatories* and Document Request Nos. 11 and 12 of *Plaintiff's Third Request For Production* as the discovery requests pertaining to the alleged "unlawful political patronage" claim, or Count 3 of the amended complaint. Count 3 of the amended complaint essentially alleges that defendants City of Chicago, Santella, Urian, Joyce, and Kane have unlawfully based hiring and promotion decisions at all levels of Fleet on political affiliation, support, and allegiance to the Democratic Party and/or political sponsorship by members of the Democratic Party. Allegedly, defendant City's actions reflect a policy, custom, or pattern of official conduct of engaging in unlawful patronage practices:

a. Defendant Urian recommended that Plaintiff seek the support of a political sponsor in order to obtain a promotion, and plaintiff was denied a promotion after he refused to do so;

b. Plaintiff was denied a promotion to the position of Manager of Vehicle Adjustments in favor of Gary Santella, the brother of defendant Santella, the Commissioner of Fleet;

c. Wally West obtained the position of Accident Adjustor and was promoted to Manager of Vehicle Adjustments over Plaintiff based on his connections to Gary Santella;

---

11. It should be noted that without waiving their objections to Document Request No. 3, the defendants did produce to the plaintiff relevant work histories, disciplinary records, performance evaluations, resumes, curriculum vitae, and related documents. *See,* Exhibit M, at 3.

12. *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane"*, at 6.

13. *"Defendants City Of Chicago, Santella, Joyce And Kane's Objections And Responses To Plaintiff's First Set Of Interrogatories And Requests For Production To Defendants City Of Chicago, Rick Santella, Eileen Joyce And Adrienne Kane"*, at 7, Exhibit A to, *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane"*.

d. On information and belief, defendants have made other hiring and promotion patronage-based decisions for which patronage is an unlawful consideration.[14]

It is the above vague, general, and conclusory allegations which plaintiff seeks to use as a predicate for his predatory discovery requests. With respect to subparagraph (a) noted above—what position is plaintiff talking about, when was it available, was he the most qualified?

Subparagraph (b) looks more like a nepotism charge than a political patronage one. Was the plaintiff more qualified than the brother? There are no allegations from which such could be inferred.

Subparagraph (c) is a thin reed upon which to launch massive discovery. What is the nature of the "connections" of which the plaintiff complains—family, friendship, or political? There are no allegations from which one could infer that these so-called connections are unlawful.

Subparagraph (d) is clearly a "fishing expedition" allegation.

█ The next discovery request at issue is Interrogatory No. 2. *Interrogatory No. 2* of *Plaintiff's Second Set Of Interrogatories* reads as follows:

2. Provide the following additional information regarding all current and former City of Chicago Department of Fleet Management or its predecessor agencies or department employees, identified in answer to interrogatory no. 1, for the years 1993 to present:

 a. Their current and former political party membership, if any;

 b. Any and all political functions or events they have attended;

 c. Any and all political work (paid or unpaid) in which they have engaged;

 d. Any and all political contributions they have made;

 e. Identify any and all Department of Fleet employees who suggested, in-

structed, told, mentioned, or in any way referred any of these persons to speak with any elected or appointed City official regarding any job, job opening, or promotion at the Department of Fleet Management; and

 f. Identify any and all conversations had by these persons with any elected or appointed City official regarding any job, job opening, or promotion at the Department of Fleet Management.[15]

Interrogatory No. 2 above is overly broad in scope and time, and seeks wholly irrelevant matter. Accordingly, for the second time, defendants objections thereto are sustained. It should be noted that in his motion to reconsider plaintiff makes no effort to narrow the breadth of his political patronage discovery requests.

The predatory nature of the discovery request is exemplified by its overbreadth. It must be remembered that by plaintiff's own allegations, Fleet employs nearly *six hundred employees*. The absolute ludicrousness of the discovery request is exemplified by subparagraphs (e) and (f) above, seeking *"suggestions"* and *"conversations"*, respectively, of virtually all six hundred Fleet employees from 1993 to the present.

Not only is Interrogatory No. 2 objectionable because it seeks wholly irrelevant matter, it is further objectionable because it is onerous and unduly burdensome on its face. As we noted in our April 12th *Order*, plaintiff can obtain the information through a less onerous medium, *to-wit:* depositions.

It must be remembered that the primary issue for Count 3 is, "Did the Fleet decision-makers take political affiliation or political sponsorship into account when decisions regarding promotions were made?" In turn, "Did the decision-makers have knowledge of any political affiliation or political sponsorship of the individuals promoted?" The most direct way to discover the answers to such questions is to orally examine the decision-makers on such matters at their respective depositions. All of the decision-makers have

---

14. Amended Complaint, at 15 and 16.

15. Exhibit C, at 4 and 5.

been deposed. Nothing prevented the plaintiff from inquiring of the deponents along these lines.

Additionally, nothing prevented the plaintiff from pursuing a similar line of inquiry with the individuals who were promoted to positions to which the plaintiff applied. For these individuals, the key inquiry should have been "Did you communicate your political affiliation or political sponsorship or political activity to any decision-maker?" Obviously, an individual's political affiliation or political sponsorship or political activity only becomes relevant if it was communicated to the decision-makers. If the decision-makers did not know of these matters, then they could not possibly take them into account when considering whether or not a particular individual should be promoted. Again, plaintiff was free at all relevant times during the course of discovery to depose the individuals promoted to positions to which the plaintiff applied and inquire of them along these lines. Plaintiff apparently chose not to do so. Our *Order* of April 12th did not preclude deposition discovery along the lines mentioned above. It just precluded plaintiff from obtaining the information through the unduly onerous and predatory vehicle of his overly broad and irrelevant paper discovery requests. Forcing the plaintiff to obtain his desired discovery through the vehicle of depositions should have forced him to exercise common sense and focus upon what is key to his civil rights claims.

Accordingly, if plaintiff did not obtain relevant information regarding his political patronage claims during the pendency of discovery, he can blame no one but himself. Prior to the issuance of the April 12th *Order*, on numerous occasions in open-court, the Court instructed the plaintiff to pursue the avenue of oral examination in order to obtain the information that he seeks. Discovery is now closed. If plaintiff did not avail himself of a discovery tool that was always open to him, he may not do so now.

As we have illustrated above, the very overbreadth of plaintiff's discovery requests—both those at issue and those not at issue—is *indicia* of their *predatory* nature. Further indicia is the following. On May 3d,

2001, in open-court, the defendants represented to the Court that discovery revealed that the named defendants had nothing to do with the "first cut" of potential candidates for any particular employment position. Assertedly, the Department of Employment Services made the "hiring" decisions regarding who from the pool of potential candidates would make it to the *Referral List* from which the named defendants made their selections for promotions. Obviously, if plaintiff did not make the "cut", he can not blame the named defendants unless he believes that they can influence the Department of Employment Services. In any event, the point is that pursuing massive discovery from named defendants who have nothing to do with the initial narrowing of the candidate pool strikes us as abusive discovery. Neither in his motion to compel, nor in his motion to reconsider, does the plaintiff explain his pursuit of such broad discovery from the named defendants given the apparent undisputed role and function of the Department of Employment Services.

■ *We turn next to Interrogatory No. 4.* Although plaintiff identifies Interrogatory No. 4 of *Plaintiff's Second Set Of Interrogatories And Third Request For Production* as a political patronage discovery request, it has more to do with nepotism than political patronage. Interrogatory No. 4 reads as follows:

4. Identify any and all relatives (by blood or by marriage) to Defendants Joyce, Santella and Kane who are or have been employed by the City of Chicago, or who have applied for or inquired about possible employment there and for each state:

 a. The assistance, if any, given by Defendants Joyce, Santella or Kane to these relatives in seeking employment, applying for employment, or becoming employed by the City;

 b. Any and all conversations by Defendants Joyce, Santella or Kane with these relatives regarding their seeking, applying for, or becoming employed by the City;

c. Identify all documents relative to this interrogatory, including but not limited to applications for employment, internal memos, letters, notes and other documents.[16]

Interrogatory No. 4 above is overly broad in scope and time, and thus seeks wholly irrelevant matter. Defendants' relevancy objections thereto are sustained for yet a second time.

The interrogatory is onerous and burdensome, because, among other things, it seeks information on conduct which is not unlawful. Nepotism, personal friendship, the plaintiff's being a perceived threat to his superior, or the employer's antipathy to irrelevant non-statutorily protected personal characteristics are not unlawful.[17] Nepotism, "while disreputable, is not illegal." [18]

In any event, the predatory nature of the Interrogatory is reflected in, among other things, its request for the identity of any and all relatives to the defendants who have *inquired about possible employment* with the City irrespective of whether or not they even followed through on their inquiries, and irrespective of whether or not they inquired about or applied for positions for which the plaintiff did not apply or had no interest.

More importantly, what has this discovery request to do with any issue in the case. None of the five counts of plaintiff's amended complaint is predicated on a claim for nepotism. There is no allegation that each position for which the plaintiff applied, or even half of the positions for which he applied, were given to relatives of the defendants, and that he was the most qualified for that particular position.

Interrogatory No. 4 has absolutely nothing to do whatsoever with any issue in this lawsuit. In any event, even though the subject matter is wholly irrelevant to the action, the defendants represented in open-court that the plaintiff was never precluded from obtaining the information *via* deposition testi-

mony.[19] *Stephens* counsel simply did not inquire on the matter at any of the defendants' depositions.

■ Next, plaintiff sought discovery regarding "other complaints, administrative charges, and lawsuits alleging race discrimination and retaliation". It was the Court's recollection that this request had been denied in open-court. Plaintiff was unsure, because the record was unclear on the matter. We clarify the record, and summarily sustain the defendants' objections to such discovery. Interrogatory No. 3 of *Plaintiff's First Set Of Interrogatories* and Document Request No. 13 of *Plaintiff's First Request For Production,* which relate to this requested information are both overly broad in scope and time, and seek wholly irrelevant matter.

Finally, at issue under plaintiff's motion to compel were Document Request Nos. 11 and 12 of the Plaintiff's *Third Request For Production.* They read as follows:

**Document Request No. 1.** Any and all documents regarding the job qualifications of Mike D'Antonio for the position of Director of Vehicle Maintenance, including but not limited to any job descriptions for that position; Mr. D'Antonio's resume; his personnel file; his political connections, if any, with Mike Madigan or any other elected or appointed official; and his application for the job.

### [and]

**Document Request No. 12.** Any and all documents regarding the job qualifications of Marty Nellis for his present position including but not limited to any job descriptions for that position; Mr. Nellis' resume; his personnel file; his political connections, if any, with any elected or appointed political official; and his application for the job.[20]

Without waiving their objections to the above-quoted document requests, the defendants did produce to the plaintiff the work histories, disciplinary records, resumes, cur-

---

16. Exhibit C, at 5 and 6.

17. *Wallace v. SMC Pneumatics, Inc.,* 103 F.3d 1394, 1399 (7th Cir.1997).

18. *Bickerstaff v. Nordstrom, Inc.,* 48 F.Supp.2d 790, 800 (N.D.Ill.1999).

19. *See,* Official tape-recording of the May 3, 2001 proceedings before the Court.

20. Exhibit C, at 10.

riculum vitae, and related documents for the above individuals.[21] Defendants objected primarily to the political patronage aspects of the two document requests, and then only to the vehicle of paper discovery as a means of obtaining the information. Again, nothing prevented the plaintiff from obtaining the information through depositions.

In any event, as Document Request Nos. 11 and 12 now stand, they are overly broad in scope and time. Both seek wholly irrelevant matter. Accordingly, defendants' objections thereto are again sustained.

It should be noted that no where in his motion to compel did the plaintiff ever discuss the relevancy of the information sought in Document Request Nos. 11 and 12. Footnote 5 of *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane"*, is the **only** part of the motion that speaks to Document Request Nos. 11 and 12. It reads as follows:

> Request for production nos. 11 and 12 from the Third discovery requests also request **this information** about political affiliations, but focus on two of the several White persons who were promoted to positions instead of the Plaintiff, Mike D'Antonio and Marty Nelis.[22]

*"This information"*, as illustrated by the sentence to which footnote 5 is appended, is information regarding "whether any of **these people** received suggestions or instructions to speak with any elected or appointed City official regarding any City job, and requests identification of all such conversations with these elected or appointed City officials."[23] *"These people"*, as reflected by the preceding sentence, means those "persons who were promoted to the 7 job titles instead of the Plaintiff, such as their political party membership, political functions they have attended, political work in which they have engaged, and political contributions they have made."[24] If, as plaintiff states in footnote 5, Document Request Nos. 11 and 12 were meant to include all of the above, then

we further sustain the defendants' objections thereto on the ground that the two document requests are unduly vague. Defendants could not possibly have read Document Request Nos. 11 and 12 to have included the above-referenced matters.

*In conclusion*, as we have demonstrated herein, the Court did not misunderstand any aspect of plaintiff's motion to compel. Nor did the Court make any error of apprehension or reasoning.

*Accordingly, it is adjudged, decreed, and ordered as follows:*

1. *For the second time, "Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane"* is denied.

2. *"Plaintiff's Motion For Reconsideration Of Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane Regarding Political Patronage"* is denied.

*So Ordered.*

---

**21.** Exhibit M, at 2, *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane."*

**22.** *"Plaintiff's Motion To Compel Discovery Responses From Defendants City, Santella, Joyce And Kane"*, at 7 n. 5.

